Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

**RECEIVED**

**JUN -2 2022**

**U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS**

# UNITED STATES DISTRICT COURT

### for the

### Eastern District of Missouri ▾

_____ Division

Leslie D. Avis, III

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

_Plaintiff(s)_
_(Write the full name of each plaintiff who is filing this complaint._
_If the names of all the plaintiffs cannot fit in the space above,_
_please write "see attached" in the space and attach an additional_
_page with the full list of names.)_

**-v-**

Hillsboro R-3 School District,
Dr. Jon Isaacson, Superintendent,
Regena Phillips Toeniskoetter,
Debbie Spiller,

_Defendant(s)_
_(Write the full name of each defendant who is being sued. If the_
_names of all the defendants cannot fit in the space above, please_
_write "see attached" in the space and attach an additional page_
_with the full list of names.)_

Case No. _____

_(to be filled in by the Clerk's Office)_

Jury Trial: _(check one)_   ☑Yes   ☐No

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### I.   The Parties to This Complaint

#### A.   The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Leslie D. Avis, III |
| Street Address | P.O. Box 621 (120 North Lake) |
| City and County | Hillsboro, Jefferson County |
| State and Zip Code | MO  63050 |
| Telephone Number | 636-524-2215 |
| E-mail Address | lda316@msn.com |

#### B.   The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title _(if known)_. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Hillsboro R-3 School District |
| Job or Title *(if known)* | |
| Street Address | 5 Ridgewood Drive |
| City and County | Hillsboro, Jefferson County |
| State and Zip Code | MO 63050 |
| Telephone Number | (636) 789-0060 |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | Dr. Jon Isaacson |
| Job or Title *(if known)* | Superintendent |
| Street Address | 5 Ridgewood Drive |
| City and County | Hillsboro, Jefferson County |
| State and Zip Code | MO 63050 |
| Telephone Number | (636) 789-0060 |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | Regena Phillips Toeniskoetter |
| Job or Title *(if known)* | |
| Street Address | 398 Kite Acres Drive |
| City and County | De Soto, Jefferson County |
| State and Zip Code | MO 63020 |
| Telephone Number | (636) 586-2430 |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | Debbie Spiller |
| Job or Title *(if known)* | Director of Transportation, Hillsboro R-3 Bus Garrage |
| Street Address | 9661 Highway 21 |
| City and County | Hillsboro, Jefferson County |
| State and Zip Code | MO 63050 |
| Telephone Number | (636) 789-0081 |
| E-mail Address *(if known)* | |

**C.     Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Hillsboro R-3 Bus Garage |
| Street Address | 9661 Highway 21 |
| City and County | Hillsboro, Jefferson County |
| State and Zip Code | MO  63050 |
| Telephone Number | (636) 789-0081 |

**II.     Basis for Jurisdiction**

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☑     Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note:  In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐     Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note:  In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐     Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note:  In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐     Other federal law *(specify the federal law)*:

☐     Relevant state law *(specify, if known)*:

☐     Relevant city or county law *(specify, if known)*:

III.     **Statement of Claim**

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.     The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

☐     Failure to hire me.

☑     Termination of my employment.

☐     Failure to promote me.

☐     Failure to accommodate my disability.

☐     Unequal terms and conditions of my employment.

☑     Retaliation.

☐     Other acts *(specify)*: _____

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.     It is my best recollection that the alleged discriminatory acts occurred on date(s)

from 08-18-2018 to 12-11-2019

C.     I believe that defendant(s) *(check one)*:

☑     is/are still committing these acts against me.

☐     is/are not still committing these acts against me.

D.     Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

☐     race          _____

☐     color          _____

☑     gender/sex          bisexual male

☐     religion          _____

☐     national origin          _____

☐     age *(year of birth)*          _____          *(only when asserting a claim of age discrimination.)*

☐     disability or perceived disability *(specify disability)*

_____

E.     The facts of my case are as follows. Attach additional pages if needed.

Having filed a discrimination complaint against a previous employer, the Hillsboro R-3 School District of Jefferson County, Missouri ("School District") and School District personnel (Dr. Jon Isaacson, Superintendent; Regena Phillips Toeniskoetter, former Director of Transportation, and Debbie Spiller, former Assistant Director of Transportation and now Director of Transportation) created a hostile work environment for me by retaliating, harassing and disciplining me so frequently and severely, and by demoting, suspending and terminating my employment due to my bisexual orientation.
Additional support for the facts of my claim attached (Pages 1-13).
Copy of the Charge of Discrimination filed with the EEOC attached.

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.   Exhaustion of Federal Administrative Remedies

A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

07-30-2020

B.    The Equal Employment Opportunity Commission *(check one)*:

☐    has not issued a Notice of Right to Sue letter.

☑    issued a Notice of Right to Sue letter, which I received on *(date)*   04/18/2022   .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.    Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐    60 days or more have elapsed.
☐    less than 60 days have elapsed.

## V.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

As a direct result of the Respondents' conduct, I suffered actual damages in the sum of $100,000.00, including loss of wages and benefits, past and present; and suffered compensatory and punitive damages in the sum of $100,000.00 for mental distress in the form of embarrassment, humiliation, anxiety, loss of sleep, mental anguish, emotional distress, pain and suffering, a detrimental job record, and loss of enjoyment of life in no longer being able to drive in the School District in which I reside and in which my daughter attends school, all of which losses are continuing and permanent in nature.

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:          06/01/2022

Signature of Plaintiff

Printed Name of Plaintiff          Leslie D. Avis, III

### B.    For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

**Facts asserted against all defendants**

(1)  Plaintiff, Leslie D. Avis, III (hereinafter referred to as "Avis"), was hired by the School District as a bus driver on August 10, 2018.

(2)  In the Fall of 2019, Avis witnessed a parent or guardian at the bus stop of two brothers, JS and JS, holding up with two hands for Avis' view what looked like an AK-47 or AR-15 firearm and putting it into the trunk of his car.

(3)  Avis immediately reported the incident to Debbie Spiller, then Assistant Director, upon returning to the bus garage.

(4)  Avis still had to make this stop to return the students home in the evening with the potential threat for a mass shooting incident at this school function.

(5)  The day Avis witnessed and told Debbie Spiller about the gun threat on Thursday morning, Debbie Spiller did nothing to report the incident to parents or other School District personnel:

    i. Debbie Spiller made reference to Avis' sexual orientation by saying, "was my kind scared?"

    ii. Debbie Spiller told Avis she thought he needed to "Calm down. This is a rural community. It is probably for deer hunting."

    iii. Debbie Spiller did not show compassion or ethics toward the parents of the School District by not taking immediate action on the gun threat as Avis trusted her to do.

(6)  On Friday, the next morning, Avis escalated the incident to Regena Phillips Toeniskoetter, then Director of Transportation, in her office as Regena was not available on Thursday morning.

    i. Regena admitted that Debbie Spiller did nothing about the threat.

    ii. Regena then brought up AK-47 and AR-15 firearms on her computer and asked Avis to identify which one Avis saw.

    iii. Regena Phillip Toeniskoetter then called Dr. Isaacson and left a voicemail for him about the gun incident.

    iv. Meanwhile, this continued to be a morning and evening stop and potential threat on Avis' route.

(7)  Avis followed up with Regena Phillip Toeniskoetter on Monday morning, or two school days later after the initial sighting.

    i. Regena said several phone call attempts were made to the parents' trac phone.

    ii. Regena said she finally did get ahold of the grandmother.

    iii. Dr. Isaacson, Superintendent, had no one go out to the bus stop to have the gun produced, nor did he have Avis identify the gun.

    iv. Regena told Avis "the mother laughed it off as being a toy gun."

    v. In response to my Charge of Discrimination, the School District admitted to it being an airsoft rifle which closely resembles an AK-47 or AR-15 firearm.

(8)  With respect to this gun incident:

    i. Dr. Isaacson did not investigate the gun incident by sending out security to the bus stop for the safety of the students of what could have been retaliation by the guardian or parent of student JS for Avis' disciplining or writing up JS for his bus misconduct.

      ii.  Dr. Isaacson did not make sure that Avis was shown what the mother "laughed off as being a toy gun" to know whether or not it was indeed what was held up for Avis to see with two hands and put in the trunk of the car by a male parent or guardian at the bus stop.

      iii.  This continued to be a potential threat at this bus stop on Avis' route.

(9)    Co-workers when calling Avis' bus for maintenance row over the radio which was heard by students, faculty and others were allowed:

      i.  To refer to it for Avis as "princess parking."

      ii.  The School District in response to my Charge of Discrimination admitted that they allowed those parking spots to be so named for Avis.

      iii.  Even though Avis complained of this to Regena that he took offense to this, she allowed it to continue.

(10)  At the beginning of Avis' tenure with School District, Avis was a first-time bus driver and started training with then bus manager Melissa Jennewein.

(11)  Due to an illness, Melissa Jennewein was often absent from the School District.

(12)  Melissa Jennewein was terminated or left employment with the School District in March of 2019.

(13)  Avis earned his CDL license to drive a bus, but lacked actual bus driving experience, i.e. driving at night.

(14)  Regena Phillips Toeniskoetter, then Director of Transportation, told Avis he needed more training.

(15)  Regena Phillips Toeniskoetter told Avis the situations with student management were common sense and that the situations with students would be gone over as they came up.

(16)  Regena Phillips Toeniskoetter never got around to giving Avis additional training.

(17)  Avis has been a resident of Jefferson County, Missouri, his entire life and attended K-12 at the Hillsboro R-3 School District graduating in 1995.

(18)  Kevin Spiller was a student at the Hillsboro R-3 School District when Avis attended.

(19)  Kevin Spiller was employed for two weeks at the Hillsboro R-3 bus garage at the beginning of Avis' employment in August of 2018.

(20)  Victor Spiller also was a student at the Hillsboro R-3 School District when Avis attended.

(21)  Victor Spiller taunted Avis as being gay and a sissy in high school.

(22)  Avis only had two physical altercations in high school and they were both with Victor Spiller.

(23)  Kevin Spiller and Victor Spiller are the son and step-son of Assistant Director, now Director of Transportation, Debbie Spiller.

(24)  The daughter of Regena Phillips Toeniskoetter, former Director of Transportation, and her daughter's best friend appeared at the bus garage shortly after Avis was hired by the School District.

(25)  The best friend of Regena Phillips Toeniskoetter's daughter is the daughter of Avis' first cousin.

(26)  Avis' family was and is aware of his discrimination complaint against his former employer prior to be hired by School District.

(27)   Regena Phillips Toeniskoetter's daughter and best friend (Avis' second cousin) were at the bus garage on more than one occasion during Avis' employment with the School District.

(28)   In Avis' sixteen months with the School District, Avis was absent only one day.

(29)   Avis' excused absence was for a mediation date in his discrimination lawsuit brought against his former employer.

(30)   Early in Avis' employment, December of 2018, Avis discussed his bisexuality with Regena Phillips Toeniskoetter in her office and voiced his fear of retaliation by her and Debbie Spiller because of their children's knowledge of his sexual orientation.

(31)   Bus Manager Melissa Jennewein, before she left the School District in March of 2019, gave Avis a good evaluation for a new employee stating:

    i.   Avis had perfect attendance with one excused absence.

    ii.   Avis turned in his work on time.

    iii.   Avis got along well with others.

    iv.   Avis was gaining valuable knowledge with the handling of the children.

(32)   Regena Phillips Toeniskoetter told Avis Melissa Jennewein who had been training him had abandoned her position with the School District and Avis' additional training would have to wait.

(33)   Regena Phillips Toeniskoetter told Avis he was a good bus driver and needed him to continue driving.

(34)   In response to my Charge of Discrimination, attorneys for School District state, "In terms of his driving skills alone, Mr. Avis was a good bus driver."

(35)   Regena Phillips Toeniskoetter in response to Avis' Charge of Discrimination with respect to the gun threat states she was "pleased that Mr. Avis was paying close attention and reported his concern."

(36)   Through Regina Phillips Toeniskoetter and Debbie Spiller questioning their contacts who knew of Avis' bisexual orientation and former discrimination lawsuit, the retaliation, harassment and discrimination as to Avis' sexual orientation began with the School District:

    A.   As confirmed in the School District's protest to Avis' claim for unemployment benefits, Avis was constantly harassed by being called into Regena Phillips Toeniskoetter's office.

    B.   Regena Phillips Toeniskoetter would call Debbie Spiller into her office to observe and as a backup.

    C.   Both Regena Phillips Toeniskoetter and Debbie Spiller were allowed to admonish Avis when Avis was called into Regena Phillips Toeniskoetter's office.

    D.   Regena Phillips Toeniskoetter and Debbie Spiller had an orange tag system at the bus garage.

    E.   Regena Phillips Toeniskoetter and Debbie Spiller would place their orange tag over Avis' keys when Avis was to come to Regena's office.

    F.   Everyone could see who had a "come see the manager" orange tag.

    G.   When you were "tagged" on your keys, it was mandatory to appear.

H. There was no confidentiality when being pulled into Regena Phillips Toeniskoetter's office.

I. It was obvious to co-workers who was being pulled into the office and conversations could easily be overheard.

J. Dave Burns, a straight male driver, seeing a tag on Avis' keys almost every day asked Avis why he was always in the office and called Avis a "momma's boy" and told Avis, "You better look for another job because obviously they don't want you here."

K. Avis could easily overhear conversations outside of Regena's office when Avis was "tagged" and crammed in the small space waiting outside her closed door for his turn, such as: Regena Phillips Toeniskoetter reprimanding straight female bus driver Jennifer Schuh in her office saying Jennifer Schuh stole 1.5 field trip hours.

L. These impromptu "come see the manager" orange tags called Avis away from his routine, day after day, making Avis feel anxious and causing Avis undue stress:

    i. Prevented Avis from timely pre-tripping his bus, i.e., if Avis had a 15-minute window to pre-trip his bus for safety issues, it could be cut down to 5 minutes or less.

    ii. Instead of Avis clocking out at 9:00 am after the morning route, it would sometimes be 10:30 am or later.

    iii. Regena unnecessarily made Avis late for the bus line-up sequence departing at 2:00 pm for the evening route on many occasions.

    iv. In the School District's response to Avis' claim for unemployment, Regena Phillips Toeniskoetter admits to pulling Avis in her office on August, 28, 2019, at 1:44 pm, along with Debbie Spiller regarding four incidents which would have been immediately prior to Avis' second route.

    v. Instead of Avis clocking out at 5:00 pm after the evening route, it would go much later as evidenced by Avis' payroll records.

    vi. On a couple of evenings, Avis was even called on his cell phone at home by Regena Phillips Toeniskoetter to discuss student/parent accusations.

M. Avis was not given a complete bus roster by Regena Phillips Toeniskoetter or Debbie Spiller during his sixteen months with the School District which was needed for:

    i. Student's names,

    ii. Parent's names and phone numbers;

    iii. To allow Avis to follow through with student discipline.

N. Without a compete bus roster, Avis' write-ups came back to Avis with generic post-it notes from Debbie Spiller saying:

    i. .."need more information"

    ii. "need last names" or

    iii. a note from a principal saying to "separate the students" which Avis had already done.

O. Students were continually allowed to break rules on Avis' bus even though Avis made several attempts to work with School District personnel by reporting disruptive behavior on Avis' bus which was not followed through in the School District's attempt to get rid of Avis because of his bisexual orientation.

P. Regena Phillips Toeniskoetter stressed that the bus drivers were to handle the situation themselves and write up the disruptive students, but Avis was not given a complete bus roster.

Q. Regena Phillips Toeniskoetter during group professional development meetings said because the buses are not air conditioned the drivers should not call on the building principal to address the student behavior but the drivers should write up the student and not delay the buses from departing on time.

R. It was only after Avis' prevailing in his claim for unemployment:

    i. That the School District provided the EEOC with a modified and updated 2020-2021 Transportation Handbook.

    ii. The building assistant principals being called upon to work with and train bus drivers to prevent and respond to student conduct situations as stated in the new 2020-2021 Handbook was never made available to Avis in his tenure with the School District.

S. In November and December of 2018 for voicing safety concerns where the DeSoto School District was having Avis load and unload the pre-school children which allowed cars to go around the bus, Avis was demoted from Bus 72 (a mini-bus taking pre-school children to DeSoto School District), taking away work hours, reducing Avis' pay, and comments were made as to Avis' sexuality.

    i. Initially, Regena Phillips Toeniskoetter told Avis it was a "good catch" and that Avis was to put out the stop arms on the mini bus to stop the cars.

    ii. However, after Avis' morning route and Avis bringing this to Regena a second time, Regena called in Debbie Spiller and Matt Whitehead, Executive Director of Special Services, and Avis to discuss the situation about the DeSoto School District.

    iii. At that meeting Regena said Avis was correct for standing up for the safety of the pre-school children, but she felt Avis was being "too sensitive."

    iv. At the end of afternoon route and as Avis waited to go into Regena's office to find out the final result with the meeting with Matt Whitehead and Debbie Spiller, Debbie Spiller told Avis, "Your kind should not be able to be around these kids."

    v. In the afternoon meeting, Avis was told by Regena that his safety concerns were causing too many issues and that she was removing Avis from the mini bus.

    vi. Avis' take home pay was reduced by losing the mid-afternoon route (10 hours a week plus hours for when the DeSoto School District was in session and the Hillsboro School District was not in session).

T.  In 2018 when Avis still had Bus 72, during his short breaks between the three routes (morning, mid-day and afternoon), Avis would watch the "Bold and the Beautiful" in the downstairs TV lounge area.

  i.  Debbie Spiller would harass Avis about the adult content of the show, calling it "soapy" and "girly."

  ii.  To avoid Debbie Spiller's sexual comments, Avis retreated from the downstairs TV lounge area and began sitting in the upstairs vacant offices during his break.

  iii.  However, once Debbie Spiller actually saw Avis resting in an upstairs office and conversing with Angela Arnold, a straight female bus driver:

     (a)  the soft couches and furniture began to disappear from the offices;

     (b)  a note was left on one of the doors that no one was to use the offices and had to use the upstairs or downstairs lounges which contained no soft couches, just hard chairs.

U.  The upstairs office Avis would use had one of only two bathrooms in the upstairs and one of four bathrooms in the entire bus garage.

V.  The two downstairs bathrooms were marked one for men and one for women.

  i.  Since there were more female bus drivers than male bus drivers, the female drivers were constantly using the bathroom marked for men.

  ii.  The females used the bathroom marked for men and were allowed to make sexual innuendos.

  iii.  For example, they would say or make notes to the effect, "No urine on the floor," "it's smaller than you think," and "keep the lid down," which supervisors Regena Phillips Toeniskoetter and Debbie Spiller allowed even after Avis complained of same.

W.  Debbie Spiller continued to:

  i.  skip Avis on trips where Avis could make extra money;

  ii.  did not send Avis bid proxy sheets if Avis was on a Friday trip;

  iii.  all of which Regena Phillips Toeniskoetter allowed to happen in the School District's attempt to get rid of Avis.

X.  After Avis lost Bus 72 at the beginning of 2019, he was assigned Bus 30.

  i.  Bus 30 went to Raintree County Club and Tracy Lane and then back to school.

  ii.  Students JH and LK would bully a very younger student M who lived at Raintree Country Club but got off at A-Z Day Care.

  iii.  Avs wrote up JH, LK and M for fighting, arguing and causing unsafe disruptions on the bus at least three times, but never saw any corrective action.

  iv.  At least two of Avis' three write-ups should have been on file.

  v.  Student JH even asked Avis after one of these write-ups if Avis wrote him up and when Avis replied that he had and it should be in his file, JH said, "well nothing happened."

vi. Avis gave one of the three write-ups to Manager Melissa after JH told Avis "well nothing happened" on Avis' first write-up.

vii. The third one of Avis' three write-ups Avis personally handed to Principal Ramsey.

viii. Regena Phillips Toeniskoetter admitted to there being only one write-up in the files with the other two apparently being "lost."

ix. Melissa Jennewein on seeing one of the write-ups on student LK said to Avis, "Is this the student you wrote up and gave to Principal Ramsey?" Avis replied, "It is the same student, but a different incident." Putting her head in her hands, Melissa shook and said, "What are we going to do? His parent (Kevin Knuckles) used to work as a bus driver for the School District."

x. The next day Avis' Bus 30 was in the garage.

xi. Avis asked Mike Vaughn, the technician, what was wrong with his bus.

xii. Mike Vaughn volunteered to Avis that the camera wasn't recording and had to be reformatted.

xiii. Normally Debbie Spiller would not allow buses to leave the garage without a working camera, but according to Mike Vaughn, Avis' bus was allowed to leave the garage without a working camera.

xiv. Regena's response to Avis questioning the non-working camera and why no corrective action had been taken against students JH, LK and M was to call Avis in her office to admonish Avis for asking a fellow employee (Mike Vaughn) why Avis' bus was in the garage.

xv. In Regena's attempt to get rid of Avis because of his sexual orientation, Regena ignored Avis' concerns for bus safety and student behavior by not taking corrective action against the students.

xvi. Then Manager, Melissa Jennewein, Regena Phillips and Junior High Principal Jim Ramsey all could have taken corrective action against students JH, LK and M, but none was taken.

Y. Bus 6, driven by straight female driver (Cherie Buijr), and Avis' Bus 17 parked next to each other on the high school parking lot on the afternoon route.

i. Cherie Buijr has her own children on Bus 6.

ii. Students JH and LK had the windows down on Avis' Bus 17 and motioned for Cherie's son to do the same.

iii. JH and LK shouted to Cherie's son "f**k his mother" and calling her a "hot bitch."

iv. Still trying to discipline the bad bus behavior, Avis wrote up the incident, but no corrective action was taken against these students.

Z. One of the harassing incidents that was admitted by the School District in their protest to my claim for unemployment was that Regena Phillips Toeniskoetter's pulled Avis into her office on August 28, 2019, to discuss "Grandmother of student, JH, called the bus garage and believes that on August 25 or 26, Don [Leslie D.] Avis . . . said the word, 'shit.' Because the student was not able to narrow down the day, I [Regena] could not find the incident."

AA. Avis denied saying "shit" because he did not say it, but Regena was so blinded by her sexual stereotyping, harassing and discrimination against Avis that she felt the need to again pull Avis into her office to face baseless, senseless accusations and put her disciplining Avis for same in his employee file.

    i. Regena did not take the proper amount of time to view the tapes from those two days to clear Avis of the accusation.

    ii. Regena took the word of the grandmother of the student JH that bragged after Avis wrote him up that he suffered no consequences.

BB. Debbie Spiller added Reynolds Creek Road and more stops to Bus 30 when it became Avis' route in her attempt to get rid of Avis:

    i. The longer route then made getting back to school in time to qualify for more afternoon trips impossible for Avis.

    ii. Not getting afternoon trips decreased Avis' take home pay.

CC. In August of 2019, Debbie Spiller had Avis keep the Reynolds Creek Road bus stops:

    i. Debbie Spiller also added the A-Z Day Care to the route and assigned Avis Bus 17, an even longer, longer bus, to accommodate more students.

    ii. Debbie Spiller only made changes to Avis' Bus 17 which was one of two buses that went to Raintree.

    iii. The other Raintree bus was driven by a straight male bus driver Tom whose route was not changed.

    iv. The explanation that Debbie Spiller gave Avis for assigning Avis the longer route was that Amber Stroter needed more bathroom time between routes.

    v. This change allowed straight female bus driver Amber Stroter to get back to the bus garage sooner and be available for extra trips.

    vi. The caravan of buses ready for the second route to take students home would be waiting at the school to take home the younger students and could not leave until Avis got back to the school.

    vii. The principals would continuously be radioing Avis for his estimated time of arrival (ETA).

    viii. Debbie Spiller knew it was impossible for Avis to arrive any earlier with the extended route and not allowing Avis extra time to get back to the School.

    ix. Avis asked Debbie Spiller several times to alleviate the constant radioing for his ETA by giving Avis more time for the extra stops and mileage that he was given, but was repeatedly denied the same.

DD. On September 10, 2019, confirmed in the School District's protest to Avis' claim for unemployment, the School District continued to harass Avis by taking away Avis' credibility by belittling and not supporting Avis in Avis' attempt to ensure bus safety when he needed a student's name.

    i. Avis gave the student to the count of three or he was calling security.

    ii. Debbie Spiller, in her office, accused Avis of lying on the write-up which was false and inaccurate.

      iii. Avis explained to Debbie Spiller that he was only telling the student that he would call security, meaning a principal or administration, if Avis didn't get the student's name.

      iv. Instead of clarifying her misunderstanding of Avis' write-up which could not be processed and was returned to Avis for lack of a name, Debbie Spiller "apologized to the Principals because Don was not honest on the bus conduct" [quoted from attachment to the School District's protest to Avis' claim for unemployment].

EE. On October 5, 2019, Avis went to Regena Phillips Toeniskoetter for advice and asked her to look at the tape with him about the write-up Avis was working on where Avis repeated the gay and offensive words a student said to him on October 4, 2019.

      i. Instead of helping Avis by reviewing the tape with him, Regena looked at the tape without Avis and then told Avis he was out of line.

      ii. The School District in response to Avis' Charge of Discrimination admitted that "The student when he was getting the write-up turned to his friends and complained, "Your gay bus driver is writing me up."

      iii. The School District's attorneys in response to Avis' Charge of Discrimination admitted that Regena and Avis talked prior to going to Dr. Isaacson about Avis' sexuality and Avis' reaction to the gay stereotyping used by the student: "Ms. Phillips (Regena) met with Mr. Avis to discuss his inappropriate reaction to the student's misconduct . . . . Mr. Avis stated that he takes things personally and becomes confrontational."

      iv. Regena in the School District's protest to Avis' claim for unemployment brought up the unsubstantiated previous cursing incident saying, "I reminded him [Mr. Avis] of his previous cussing incident and told him that the last time we documented it, but this time it would definitely be a full corrective action that [Regena] would be sharing with Dr. Isaacson."

      v. Instead of Regena giving Avis the advice he sought for the situation which Avis himself brought up, Regena forced Avis to follow her in his car from the bus garage to the administration building for an impromptu meeting with Dr. Isaacson.

      vi. Dr. Isaacson suspended Avis without pay on October 10, 2019, for repeating the gay and offensive comments a student directed to Avis so as to have the wording correct for his write-up of the student.

FF. Regena Phillips Toeniskoetter was so intent on getting rid of Avis, Superintendent Dr. Jon Isaacson initially told Avis he thought he would be firing Avis on October 10, 2019, for the cursing incident on October 4, 2019.

GG. On October 10, 2019, Avis was suspended for repeating the gay and offensive comments a student said to Avis:

      i. Dr. Isaacson didn't start Avis' suspension until the following week, October 14 through October 18, 2019.

    ii. Dr. Isaacson told Avis he should not talk about his delayed suspension as there was enough "scuttlebutt" associated with Avis' name.

    iii. Dr. Isaacson told Avis that he could say what Avis said for the shock value to a parent, but that Avis could not say what he said in front of a student.

    iv. In Regena Phillips Toeniskoetter's attempt to fire Avis told Dr. Isaacson that she could get another driver to do a scheduled field trip that week.

    v. By Regena bringing in a prior documented and unsubstantiated cursing accusation and Avis repeating what a student said to him to get it correct in the write-up cost Avis a five-day suspension in the School District's attempt to get rid of Avis.

HH. Avis witnessed firsthand that Amber Stroter, a female straight bus driver, was allowed to curse in front of Avis, fellow bus driver, Zach Smith, children in her presence and Regena Phillips Toeniskoetter on the telephone when describing a bus incident in words, or words to the effect, "Your new driver backed into the mother**ker and f**ked bus 14 all up."

II. Similarly, Avis also witnessed Cheryl Meese, another straight female driver, call David Burns, a male straight driver, a "jerk" and Burns in turn called Meese a "bitch." Neither the straight female drivers or the straight male driver suffered any suspension, firing or other consequences for their language.

JJ. Regena Phillips Toeniskoetter told Avis he could not discuss confidential personnel matters:

    i. When Avis brought up in an open professional development day meeting on August 14, 2019, that 1) a former employee bragged about being a "doper" and "pothead" on his Facebook page; and 2) that security camera footage was missing on one of Avis' write-ups.

    ii. However, when Cheryl Meese was literally crying coming from Regena Phillips Toeniskoetter's office on an occasion when Avis was waiting outside Regena Phillips Toeniskoetter's office, Regena told Avis that Cheryl Meese and David Burns needed to communicate better discussing with Avis what Regena had discussed with Cheryl Meese.

    iii. Yet, Avis was admonished for bringing up his concerns of what Avis read on Facebook and what Avis was voluntarily told by a colleague.

KK. Regena Phillips Toeniskoetter made sexual comments to Avis which were offensive as in "If I want confidentiality, I get naked in a tub and have my shoulders rubbed."

LL. In the Fall of 2019, then Assistant Director Debbie Spiller, referred to Avis' gay sexuality and asked Avis if his "kid (was) scared" of him which was offensive.

MM. When Avis volunteered for extra duty jobs to make additional money, Regena Phillips Toeniskoetter would pass over Avis in favor of other bus driver who were not bisexual.

NN. On December 10, 2019, it was reported to Avis by a student that two students, CB, a 3rd grader, (See Page12, RR.v.-Principal Drury), and JS, a 6th grader (See

Pages 1-2, (2)-(8) gun threat), were allegedly fighting in the back of Avis' Bus 17.

   i. As available on the bus tape, Avis was already in the driver's seat, seat belt on and the buses were under escort to leave the parking lot [the time per the School District's response to Avis' claim for unemployment was 3:52 pm].

   ii. When Avis looked up in the mirror the fight was over and the students were already separated which is only what Avis could have done if Avis had actually seen the students fighting so Avis continued on with his route.

   iii. The next day Avis was instructed by Regena Phillips Toeniskoetter to give her a write-up about the incident before Avis left that day.

   iv. Avis did submit a write-up from hearsay as Avis did not actually see the fighting.

   v. The School District's admits in their response to Avis' Charge of Discrimination that Regena after reviewing the bus tape said "He [Mr. Avis] listed Student B as the aggressor despite being told that Student A had started the fight," again admonishing Avis for his write-up and not addressing the safety issues that would have been afforded to a straight bus driver.

OO. Knowing CB was a safety concern, Regena Phillips Toeniskoetter, Debbie Spiller, nor Dr. Jon Isaacson did nothing to assist Avis with the prior disruptive and violent behavior exhibited by student CB which was reported by Avis and student CB was allowed to continue to ride Avis' bus.

PP. Dr. Jon Isaacson when terminating Avis said that he "dodged a bullet" with Avis referring and making fun of the airsoft rifle threat incident.

QQ. Dr. Jon Isaacson when terminating Avis said that he couldn't fire a student, but he could fire a bus driver.

RR. Avis disagrees with the claim of Regena Phillips Toeniskoetter that he was rude and disrespectful to Principal Drury. referring to an incident with student CB, a 3rd grader, who again, Avis wrote up many times:

   i. CB's behavior included:

      (a) spitting on other students,

      (b) throwing hot wheels,

      (c) swinging his necklace,

      (d) grabbing students and their belongings,

      (e) bullying other students; and

      (f) arguing with Avis.

   ii. In one incident, CB was bullying other students and Avis went to the back of the bus and asked CB to switch aisles and sit in another seat.

      (a) In doing so CB argues with Avis,

      (b) CB hits Avis with his bookbag as CB swung the bookbag into the seat,

      (c) committing a series of safety violations.

   iii. Regena Phillips Toeniskoetter was hesitant about even reporting the incident with CB and challenged Avis as to whether or not Avis had been hurt.

     iv. When Avis was on the phone with Mrs. Drury, Avis questioned his many write-ups on student CB who constantly displayed disruptive behavior on Avis' bus.

     v. Mrs. Drury said the student's behavior was being addressed, but said, "no way was he [the student CB] being removed off a big bus" (referring to CB being put on a mini bus with a seat belt).

     vi. The attorneys for the School District in response to Avis' Charge of Discrimination state that Ms. Phillips said "Mr. Avis was extremely disrespectful to Mrs. Drury, including using profanity while on the call":

       (a) However, Avis is already on suspension for cursing and is not wanting to jeopardize his job.

       (b) The "profanity" used is not defined or quoted by Regena which was her custom as evidenced by Avis' employee file.

       (c) Yet, Regena is still working with Avis after this supposed rude and disrespectful behavior

     vii. Avis was in no way trying to be rude or disrespectful to Mrs. Drury, but was only trying to convey to Mrs. Drury his safety concerns that student CB was causing by Mrs. Drury promising the grandmother that CB would not lose his bus riding privileges.

     viii. Instead of disciplining student CB or removing student CB to the mini-bus as they did his brother TE earlier in the school year, Regena Phillips Toeniskoetter apologized to Mrs. Drury for Avis allegedly not "responding appropriately," again taking away Avis' credibility by belittling and not supporting Avis in Avis' attempt to ensure bus safety when Avis brought up and was addressing the safety concerns about student CB on Avis' bus.

SS. When a straight female bus driver, Jackie Nelson, had a similar altercation with a student on her bus route, security officer Dan Norris was called to remedy the situation.

TT. Amber Stroter, a straight female bus driver, was kicked by a student who laid down in his seat and refused to remove a bag from his head:

     i. Regena Phillips Toeiskoetter responded to Amber by coming to her bus enroute with a substitute driver.

     ii. Took Amber to the hospital

     iii. Whereas Avis' incident with student CB was sloughed off when Avis stressed that CB's behavior issues were a grave safety concern on Avis' bus.

UU. Avis was terminated on December 11, 2019, allegedly for "allowing disruptive or violent behavior on the bus" which was no different than that Avis previously stressed and reported to the School District on these two students and which students Avis could have only separated if Avis had seen them fighting:

     i. After Avis was terminated from the School District, a student LK jumped out of a bus window and straight female bus driver Julia D. was not fired for same.

      ii. Dale, another male straight bus driver, was not fired for leaving a student on the bus at the end of his route.

      iii. Female straight driver Gina Cline was not terminated, but was offered more training, when one of the students at a stop on her route had not yet crossed over with the other students in front of her bus when she was pulling off.

VV. In the Fall of 2018 and 2019 Avis worked with security officer Daniel Norris which was a separate job from being a bus driver and was not associated with the Bus Transportation Department.

      i. Security was for Friday night football games at the high school.

      ii. Avis earned extra wages for working security.

      iii. Avis lost these wages when Avis' bus driving job was terminated.

WW. Because of Avis' sexual orientation, Regena confirms in the School District's protest to my claim for unemployment that the School District implemented extra security measures upon Avis' termination banning Avis from the bus garage and damaging Avis' reputation:

      i. However, in 2018 at the beginning of Avis employment with the School District. straight bus driver Rick Struckhoff totaled a bus by hitting a car that pulled out in front of him as he was going up a hill.

      ii. Avis witnessed the accident.

      iii. Struckhoff was traveling north on Highway 21 and Avis was traveling South on Highway 21.

      iv. The bus garage was trying to get Struckhoff on the radio with no success.

      v. Avis saw that Struckhoff was outside the bus checking on the other vehicle.

      vi. Avis tried to help by radioing in several times to let the bus garage administration know the location of the accident and the situation:

      vii. The bus garage administration kept radioing, "clear the air waves," over and over again, admonishing and refusing to allow Avis to speak as he tried to report the situation.

      viii. Struckhoff tested positive for marijuana the day of the wreck.

      ix. Driver Struckhoff and Assistant Director Debbie Spiller were friends on Facebook.

      x. Driver Struckhoff openly admitted on Facebook his lifestyle of smoking marijuana.

      xi. When straight male driver Struckhoff's employment with the School District was terminated, there were no extra security measures put into place.

      xii. Struckhoff was allowed to frequent the bus garage unchecked and bring in breads and cookies to Melissa Jennewein, Regena Phillips Toeniskoetter, Debbie Spiller and the other bus drivers.